23695

Henry P. ELIAS, Appellant v. FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, Respondent.

(420 S.E. (2d) 504)

Supreme Court

*D. Michael Kelly* and *John Kassel,* Columbia, *for appellant.*

*Robert E. Salane,* Columbia, *for respondent.*

Heard April 21, 1992; Decided Aug. 10, 1992.

Reh. Den. Sept. 9, 1992.

Toal, Justice:

Henry Elias ("Elias") appeals the order of the Master in Equity finding that the Firemen's Insurance Company of Newark, New Jersey ("Insurer") effectively cancelled the homeowner's insurance policy on his house and alternatively, the policy lapsed. We reverse.

## FACTS

When Elias purchased his house, Standard Federal was the mortgagee. An escrow fund was established to pay the homeowner's insurance and taxes on the property. Elias purchased the original homeowner's insurance policy from Elliott-Ariail Agency, a wholly-owned subsidiary of Standard Federal.

In November 1985, Bucky Grice ("Agent") of the Elliott-Ariail Agency contacted Elias in an effort to sell him insurance on his automobile. Elias purchased a dual coverage policy from Elliott-Ariail Agency which covered both his automobile

and his house under one contract. The homeowner's portion of the policy was to be billed to Standard Federal and to be paid out of Elias' escrow fund. The automobile portion of the policy, with a premium at the rate of $98 per quarter, was to be billed to Elias.

When Elias received his first bill, it was for $210, not $98. When the agent informed the Insurer of the problem in the billing, it was determined that the billing could be corrected only by cancelling the original policy and issuing another policy. The second policy was backdated to November 26, 1985 with an expiration date of November 26, 1986.

On February 5, 1986, Standard Federal was billed $195 for the homeowner's portion of the policy, which they paid on February 17, 1986 from Elias's escrow fund. The record contains two cancellation notices to Elias from the Insurer. The first notice was dated February 12, 1986 and purports to cancel the policy for Elias's failure to pay the billed amount of $161.[1] The second notice was dated April 30, 1986 and shows a billed amount of $219.50.[2] The testimony reveals that Elias received one other bill from the Insurer in the amount of $110. In September 1986, Elias paid the $110 bill and the $161 bill. The Insurer refunded the $161 payment.

On January 1, 1987, Elias' house burned. The Insurer denied coverage. Because the house was a total loss and the Insurer paid no benefits, Elias was unable to continue to make his house payments to Standard Federal. Standard Federal foreclosed on the loan. Thereafter, the Insurer settled with Standard Federal as loss payee.

Elias brought a declaratory judgment action seeking to reform the insurance contract to provide coverage at the time of the fire. The Master in Equity found that the policy was cancelled as of May 20, 1986 and alternatively, that the policy expired on November 27, 1986. Thus, the Master found no coverage under the policy.

## LAW/ANALYSIS

There are two issues presented on appeal. First whether the cancellation notice was sufficient to cancel the home-

[1] This notice has a policy number of 39PCP 0355 93 57.
[2] This policy number was 39CPC 0355 90 32.

owner's portion of the insurance policy; and second, whether the contract of insurance expired by its own terms?

The insurer claims that this is an action at law, limiting our scope of review to corrections of errors of law or factual findings which are not reasonably supported by the evidence. *See Townes Assoc., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976). We disagree. A declaratory judgment action is legal or equitable, depending upon whether law or equity would have had jurisdiction if there had been no declaratory judgment procedure. *Felts v. Richland County*, 303 S.C. 354, 400 S.E. (2d) 781 (1991). In order to recover, Elias must show that the cancellation notices were insufficient to cancel the homeowner's portion of the policy and that the expiration date should be extended, thus reforming the provisions of the policy. An action to reform an insurance policy is an action in equity. *See Jackson v. State Farm Mutual Auto. Ins. Co.*, 301 S.C. 440, 392 S.E. (2d) 472 (Ct. App. 1990) *aff'd* 303 S.C. 321, 400 S.E. (2d) 492 (1991). Because this is an equitable action, we may find facts in accordance with our view of the preponderance of the evidence. *Townes, supra.*

The cancellation notice mailed by the Insurer purported to cancel the entire policy for nonpayment of premiums. The Insurer, however, had been paid the entire premium for the homeowner's portion of the policy. In *Crossley v. State Farm Mutual Automobile Insurance Co.*, — S.C. —, 415 S.E. (2d) 393 (1992), we held that the payment and acceptance of insurance premiums create contract of insurance. Thus, the question becomes whether the policy can be severed into the homeowner's portion and the automobile portion. If the policy is divisible such that the payment of the homeowner's insurance premium created a complete contract for insurance on the house, then the homeowner's portion of the policy may not be cancelled unless the Insurer complies with appropriate statutory provisions. *See* S.C. Code Ann. § 38-75-730 (1989) (property and casualty insurance policy in effect for 90 days may not be cancelled without enumerated reason); S.C. Code Ann. § 38-75-760 (1989) (unlawful for Insurer to cancel or non-renew policy unless in compliance with this article).

This Court has long recognized that a contract for insurance may be divisible. *See Trakas v. Globe & Rutgers Fire Ins. Co.,* 141 S.C. 64, 139 S.E. 176 (1927); *see also South Carolina Ins. Co. v. White,* 301 S.C. 133, 390 S.E. (2d) 471 (Ct. App. 1990). In *Trakas,* 141 S.C. at 69, 139 S.E. at 177, this Court adopted the following rule:

> Where the property insured consists of different items which are separately valued or insured for separate amounts, the contract is divisible, and a breach of warranty or condition as to one item will not affect the insurance on the remainder of the property, even though the premium be entire.

There can be no clearer example of a divisible insurance policy than the case at bar. Here the policy insured the house and the automobile, two separately valued risks insured for separate amounts. The premium was quoted in total for the entire policy which covered the automobile and the house. The premium was separated for billing purposes with Elias paying the automobile premium and Standard Federal paying the homeowner's premium. The homeowner's portion of the premium was paid; the automobile portion was not paid. Thus, Elias was in breach as to the automobile portion of the policy; however, he fully performed on the homeowner's portion of the policy. The notice of cancellation for non-payment of premiums was, therefore, effective, if at all, to cancel only the automobile portion of the policy.[3]

Because the homeowner's portion of the policy remained in full force and effect until its expiration date of November 27, 1986, the insurer was required to comply with both the policy terms and S.C. Code Ann. § 38-75-740(a)-(b) (1989)[4] requiring that the Insurer renew the policy or give written notice of its intent not to renew the policy. Since the Insurer did not comply with the statute by either

---

[3] The record reveals that Elias was never billed the correct amount for the automobile premium. The validity of the cancellation of the automobile policy for nonpayment of premiums when the insurer at all times substantially overbilled the insured is not before us. Thus, we make no ruling on this issue.

[4] **§ 38-75-740. Restrictions on nonrenewal of policies.**

(a) No insurance policy may be nonrenewed by an insurer except in accordance with the provisions of this section, and any *nonrenewal attempted which is not in compliance with this section is ineffective.*

renewing the policy or notifying the insured in writing of its intent not to renew the policy, the policy was in force on the date of the fire, January 1, 1987. *Id.* Thus, we reverse the order of the Master and remand the case for entry of an order consistent with this opinion.

Reversed and remanded.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.

(b) A policy written for a term of one year or less may be nonrenewed by the insurer at its expiration date by giving or mailing written notice of non-renewal to the insured and the agent of record, if any, not less than thirty days prior to the expiration date of the policy. (Emphasis added.)